Elsie Barbara Rosenbusch, by Henry C. Rosenbusch, Her Guardian ad Litem, Appellant, v. Ambrosia Milk Corporation, Respondent.

First Department, December 31, 1917.

Negligence — artificial food product — failure of manufacturer to warn customer of possible deterioration — liability of manufacturer for injuries caused by deteriorated food.

The manufacturer of an artificial infant food, which is widely sold in sealed packages, is chargeable with negligence where it knows or should know that the product is liable to deteriorate and become dangerous to health, either by time, climate or temperature, or by the manner in which it is kept, if he fails to affix to the package the date of manufacture and the time during which the ingredients may safely be used, or the manner in which they should be handled and preserved to prevent deterioration. Hence, where such information is not affixed to the package, an infant who was made ill by being fed on the product, which had deteriorated and become poisonous, may recover damages.

It seems, however, that the mere vendor of patent medicines or other preparations, not manufactured or prepared by him, is not liable to third parties for injuries therefrom without proof of negligence on his part.

Appeal by the plaintiff, Elsie Barbara Rosenbusch, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 12th day of March, 1917, upon a dismissal of the complaint by direction of the court at the close of the plaintiff's case.

First Department, December, 1917. [Vol. 181.

*Edward Potter* of counsel [*Thomas A. McCole* and *Michael Potter* with him on the brief], *Sykes, McCole & Potter*, attorneys, for the appellant.

*John M. Gardner* of counsel [*Gardner, Tyndall & Barton*, attorneys], for the respondent.

LAUGHLIN, J.:

The action was brought to recover for personal injuries sustained by the infant plaintiff alleged to have been caused by the negligence of the defendant.

The defendant is a domestic corporation and it was engaged in manufacturing and selling to wholesale dealers a food product known as " Mammala." " Mammala " was designed, according to the representations made by the defendant on the cans in which it prepared it for the market and on circulars, principally as a substitute for milk for infants.

On the 9th day of July, 1914, when plaintiff was about three months old she was taken ill. The family physician was summoned and he ordered a change of diet. She had been taking Horlick's Malted Milk from the time she was three days old and he prescribed " Mammala " as a substitute. " Mammala " was put up by the defendant in sealed tin cans holding about a quart. It was represented by the manufacturer to be pure cow's milk of the best quality, modified for babies and invalids by removing part of the cream and adding milk-sugar and then dried rapidly by a scientific process known as " Hatmaker " which it represented kills all disease germs " and renders it absolutely safe and highly suitable for baby and invalid feeding." It is in powder form. A printed formula prescribing the number of feedings and the quantities to be given at each according to the weight of the baby after the fifth day was on the outside of each can. " Mammala " was sold by defendant to wholesale dealers and by them to druggists. The mother, following the advice of the physician, purchased a can of " Mammala " at a neighboring drug store and continued to feed the plaintiff thereon until the twenty-eighth day of July. In the meantime eight or nine cans had been consumed and the plaintiff thrived thereon. Another can was likewise purchased and within ten or fifteen minutes after the feeding therefrom the mother

gave the plaintiff a teaspoonful of castor oil, on the advice of the physician, she claims, which he, however, denies, and within about ten minutes thereafter the plaintiff was observed to be in convulsions. The family physician was summoned and he attributed the condition of the child to poisoned food and diagnosed the condition of suffering in which he found the child as " gastritis from poisonous food."

Counsel for the respondent while contending that the defendant is not liable for the condition of the " Mammala " at the time it was administered to the plaintiff, also claims that no permanent or other injuries were shown to have resulted from the use of it and that, therefore, in any event there was no basis for the recovery of damages. The evidence does not show any permanent injury, but it sufficiently shows that the child was poisoned by the " Mammala " and that the castor oil was not a contributing cause and that she suffered therefrom for some considerable time. On that branch, therefore, a case was made for the consideration of the jury.

The plaintiff rested on proof that she was poisoned by the " Mammala " thus prepared and placed on the market by the defendant. She offered no other evidence tending to show negligence on the part of the defendant, excepting the representations made by it on the labels and in circulars. There is, therefore, no express evidence that the " Mammala " was in the same condition when administered to the plaintiff as when it was placed in the can by the defendant. This presents a novel, interesting question of law as to whether the evidence was sufficient to make out a *prima facie* case of negligence on the part of the defendant. No precedent precisely in point has been cited or found. It has been held that where one is poisoned or injured by food purchased at a restaurant, or by bread, or by milk, proof of that fact alone is sufficient to place the burden upon the proprietor of the restaurant, the manufacturer of the bread or the vendor of the milk to show the exercise of all due care on his part (*Leahy* v. *Essex Co.*, 164 App. Div. 903; *Race* v. *Krum*, 162 id. 911; 163 id. 924; *Freeman* v. *Schultz Bread Co.*, 100 Misc. Rep. 528; *Cook* v. *People's Milk Co.*, 90 id. 34; affd., 175 App. Div. 966); and it has also been held that one who prepares poisons or medicines and places them on the

market under a false label or without disclosing the composition of the medicine and recommends its use for indicated maladies is presumptively liable to any one injured thereby. (*Thomas* v. *Winchester*, 6 N. Y. 397; *Willson* v. *Faxon, Williams & Faxon*, 208 id. 112; *Blood Balm Co.* v. *Cooper*, 83 Ga. 457, 459.) It is also well settled in this jurisdiction that one who manufactures an appliance or machine of any kind which is inherently dangerous is presumptively liable for negligent construction to another injured thereby without proof of any contractual relation between them (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Torgesen* v. *Schultz*, 192 id. 156; *Statler* v. *Ray Mfg. Co.*, 195 id. 478); and that one who negligently builds or constructs or repairs a dangerous appliance or structure from which others are liable to receive injury is presumptively liable without regard to any contractual relation. (*Rosenfeld* v. *Smith & Son, Inc.*, 180 App. Div. 691; *Devlin* v. *Smith*, 89 N. Y. 470; *Burke* v. *Ireland*, 26 App. Div. 487; *Kahner* v. *Otis Elevator Co.*, 96 id. 169; *Davies* v. *Pelham Hod Elevating Co.*, 65 Hun, 573; affd., 146 N. Y. 363.) The mere vendor, however, of patent medicines or other preparations not manufactured or prepared by him doubtless is not liable to third parties for injuries therefrom without proof of negligence on his part. (*Glaser* v. *Seitz*, 35 Misc. Rep. 341; *Bruckel* v. *Milhau's Son*, 116 App. Div. 832.) In the case at bar there is no charge in the complaint that the " Mammala " in question was in the same condition when prepared by defendant as when used by the plaintiff, but the plaintiff charged generally and proved that defendant manufactured and exploited " Mammala " as a food for babies guaranteed under the Food and Drugs Act, June 30, 1906,* under the serial number 47,970, and represented and guaranteed to the consumers that it was free from harmful consequences, and that it knew that the ingredients if permitted to deteriorate would become imminently dangerous to the life and health of the consumer and that it took no precaution to prevent the sale thereof after the ingredients had deteriorated and become rancid, rotten and decomposed as was the " Mammala " in question. I am of opinion that it will

---

* See 34 U. S. Stat. at Large, 768, chap. 3915.— [Rep.

not be an unreasonable extension of principles of liability already established to hold that the manufacturer in such case is chargeable with negligence where it knows or should know that the product is liable to deteriorate either by time, climate or temperature or the manner in which it is kept, if it fails to affix to the package the date of manufacture and the time during which the ingredients may safely be used or the manner in which they should be handled and preserved to prevent deterioration. There is no suggestion on the labels on the cans of " Mammala " that the contents are subject to deterioration in any of the respects stated or otherwise, and even the date of manufacture is not given. The representations in the labels and in the circulars under which the defendant has advertised this product and induced the public to buy it contain numerous representations that it is absolutely safe and may be administered to babies and invalids and convalescents in the doses prescribed without harmful results, and there is no suggestion that the product is subject to deterioration from any cause; in short, it is represented that it is a safe and wholesome food for babies, invalids and convalescents. The defendant's circular contains one express representation that " Mammala " is not affected by changes of temperature, for consumers are urged as a matter of convenience and economy to use it because " it is a dry powder which does not require ice for its preservation," and it is also expressly represented that it " is sold by all druggists in sealed boxes." The circular is replete with assurances that " Mammala " is so prepared that it may be used with perfect safety. Counsel for the respondent repeatedly states in his points that it is well known that " Mammala," being a dried milk product, is subject to deterioration if not properly cared for after leaving the hands of the manufacturer. The labels which the defendant placed on the cans and the circulars are calculated to convey an impression, if not an assurance, to the contrary. Doubtless defendant knew and chemists would know whether or not it was subject to deterioration, but mothers in general and those intrusted with the care of babies could not be presumed to possess such knowledge or to know that it was unsafe to use " Mammala " without first taking it to a chemist for analysis, and if that were neces-

sary the defendant would not sell much of it. If it be true that it is so subject to deterioration then the defendant in its circulars and labels should have drawn attention to this danger by limiting the time within which it should be used or prescribing the manner in which it should be handled and kept, and for its failure so to do I think it is answerable on the theory of negligence. These views are in the main sustained, I think, by a paragraph in the opinion of the Court of Appeals in *MacPherson* v. *Buick Motor Co.* (*supra*), wherein Judge Cardozo, writing for the court and pointing out the necessity for the extension of the doctrine on this general subject, said: " We hold, then, that the principle of *Thomas* v. *Winchester* is not limited to poisons, explosives and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully." We extend the rule by making it also the duty of the manufacturer to issue with such a food product proper instructions with respect to its preservation and use to insure the safety of its use if they are observed.

It follows that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

Clarke, P. J., Dowling, Smith and Page, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.