JOHN W. FOLEY, Respondent, v. LIGGETT & MYERS TOBACCO CO., INC., and UNITED CIGAR STORES CO. OF AMERICA, Appellants.*

Supreme Court, Appellate Term, Second Department, April 1, 1930.

* On May 7, 1930, application for reargument by first appellant was denied. Application for reargument by second appellant granted and order modified by dismissing the first cause of action (for negligence) as to it, and affirmed as to the second cause of action (for breach of warranty).

*Stroock & Stroock*, for the appellant United Cigar Stores Company of America.

*Jackson, Fuller, Nash & Brophy* [*Charles B. Brophy* of counsel], for the appellant Liggett & Myers Tobacco Co., Inc.

*Alfred L. Marilley*, for the respondent.

LEWIS, J. The action is to recover damages for personal injuries resulting to the plaintiff from the partial consumption of a certain tobacco known and advertised under the name of " Velvet " which was found, on smoking, to contain mutilated fragments of a dead mouse. The tobacco was manufactured and sold by the defendant Liggett & Myers Tobacco Co., Inc. (hereinafter referred to as the manufacturer). The defendant United Cigar Stores Company of America (hereinafter referred to as the retailer) was engaged in the business of selling smoking tobacco, and, in the course of its business, sold this package of " Velvet " to the plaintiff.

The amended complaint contains two causes of action. The first cause of action is against the defendants jointly, based on negligence, the complaint alleging that " The presence of the said dead animal matter in the tobacco aforesaid, and the smoking thereof by this plaintiff, were due solely to the negligence or lack

of care of the defendants." The second cause of action is against the United Cigar Stores Company of America for breach of warranty.

Appellants contend that neither of the said causes of action states facts sufficient to constitute a cause of action.

It was the general rule that in the absence of contract a wholesaler was not liable to third persons for his negligence in the manufacture of articles. To hold the manufacturer it must be by virtue of the rule stated in *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382). In the latter case the rule in *Thomas* v. *Winchester* (6 N. Y. 397) was considerably extended. In the *Buick* case, as here, the defendant urged that " Things imminently dangerous to life are poisons, explosives and deadly weapons — things whose normal function it is to injure and destroy." That contention was repudiated, and, whatever may have been the rule in the *Winchester* case, it now has not that restricted meaning, for, as CARDOZO, J., stated: " If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

Whether a given thing is dangerous may be sometimes a question for the court and sometimes for the jury. In the *Buick* case the court held that it was for the jury to determine whether the defendant ought to have foreseen that the car, if negligently constructed, would become imminently dangerous.

The *Buick* case, in view of its language and in the light of its subsequent judicial interpretation, may be extended to the facts here presented. It is futile to attempt an analysis of all the New York cases on this branch of the law. There are those which embrace injuries arising from foreign substances or matters in foods or beverages intended for human consumption, as well as defects in articles intended only for some external or physical use. In some cases the articles are of a nature which are inherently dangerous, and in others not of that nature. Any inference sought to be drawn from these cases would be purely speculative, but it seems that the modern tendency is to enlarge the liability of the manufacturer who places upon the market either foods or beverages intended for human consumption, or articles intended for external use, when the normal use would result with reasonable certainty in personal harm to the user if the article was not properly made. The principle underlying this modern tendency is not confined to articles or things

" imminently dangerous, such as poisons and explosives," but embraces articles not inherently dangerous or destructive in character, and not such as may be deemed implements " whose normal function is destructive." The rule in the *Buick* case, in my opinion, is not limited in its application to foods and beverages. Therefore, whether or not tobacco technically is a food seems not to be a decisive consideration in this case. While I am of the opinion that it is not food, nevertheless, the uses of tobacco are well known. The purpose of smoking is to provide a smoke which, to a greater or lesser extent, is to be taken into the human system through inhalation, just as food in solid form is taken into the system through the medium of organs designed by nature for that purpose. The controlling consideration is not that food may have the potency to sustain life while no such attribute is possessed by tobacco. The paramount consideration seems to be that deleterious matter, either in food or tobacco, may be as injurious to life and health in the one case as in the other.

Upon the trial evidence may be adduced to show that smoke arising from tobacco which contains decayed animal matter is poisonous and extremely dangerous when taken into the human system and that the manufacturer is aware thereof.

The jury should be permitted to determine whether the " manufacturer " ought to have foreseen that the package of tobacco, if negligently prepared, would become imminently dangerous to the consumer.

The complaint, however, does not state any cause of action for negligence against the retailer. (*Cohen* v. *Dugan Bros., Inc.*, 132 Misc. 896.) The principle was upheld on appeal (227 App. Div. 714). The only allegation of fact is that the plaintiff bought a package of tobacco known as " Velvet," manufactured and put into package form by the wholesaler. There is no allegation of fact from which the inference may be drawn that the retailer was under a duty of inspecting the contents of each package sold, or that this was possible, or that there was any violation of duty owing by the retailer to the plaintiff. (*Beatty* v. *Pearl White McCutcheon*, 200 App. Div. 869; *Schweitzer* v. *Mindlin*, 248 N. Y. 560; *Rosenbusch* v. *Ambrosia Milk Corporation*, 181 App. Div. 97.)

A sufficient cause of action is shown against the retailer on the theory of implied warranty. The complaint meagerly discloses that the plaintiff purchased of the retailer a package of tobacco known as " Velvet," which was prepared by the manufacturer and put into packages by it with its name printed on the outside of the package. The physical nature of the package, of what material it was made and how it was inclosed, sealed or fastened, is not disclosed.

The New York Personal Property Law, so far as applicable, is as follows:

" § 96. Implied warranties of quality. Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

" 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

" 2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality. * *. *

" 4. In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose * * *." (Added by Laws of 1911, chap. 571.)

The fact that an article sold happens to have a trade name does not exclude all warranties or even bring subdivision 4 into operation. The Sales Act is a codification of the common law. (Williston on Sales, §§ 236-a, 249; *Rinaldi* v. *Mohican Company*, 225 N. Y. 70.)

Subdivision 4 is a codification of what was the rule at common law in regard to a known, described and definite article. There being considerable identification between the American and the English Sales Act, reference will be made to the English cases.

In *Baldry* v. *Marshall* (L. R. [1925] 1 K. B. Div. 260) the court, in construing the English Sales Act, stated: " The mere fact that an article sold is described in the contract by its trade name does not necessarily make the sale a sale under a trade name. Whether it is so or not depends upon the circumstances." The court gives illustrations, and then states: " In my opinion the test of an article having been sold under its trade name within the meaning of the proviso is: Did the buyer specify it under its trade name in such a way as to indicate that he is satisfied, rightly or wrongly, that it will answer his purpose, and that he is not relying on the skill or judgment of the seller, however great that skill or judgment may be."

In *Sachter* v. *Gulf Refining Co.* (203 N. Y. Supp. 769) it was held that a buyer, in purchasing trade-mark oil, relied upon the seller's representation that the oil was what the buyer's machinery required and not upon the trade name, and that there was an implied

warranty under section 96, subdivision 1, of the Personal Property Law.

*Ireland* v. *Liggett Co.* (243 Mass. 243) is to the same effect.

The mere fact, therefore, that an article sold happens to have a trade name does not, *per se*, bring the sale under subdivision 4 of section 96 of the Personal Property Law (added by Laws of 1911, chap. 571). Assuming, however, that subdivision 4 does apply that section does not exclude the warranty contained in subdivision 2.

While *Empire Cream Separator Co.* v. *Quinn* (184 App. Div. 302) seems to the contrary, the statement contained therein is clearly dictum.

In *McNeil & Higgins Co.* v. *Czarnikow-Rienda Co.* (274 Fed. 397), HAND, J., construing the New York Personal Property Law, says: " Where the buyer specifies what he wants, he can, of course, not rely upon any superior knowledge of the seller that it will serve its purposes. If he did, he must give the seller some latitude of selection. But he may still insist that it must be of a quality which will pass in the market under that description, and he may rightly rely upon the seller to secure him such a quality." In that case the court was discussing merchantability, and the court conceded that the case fell within subdivision 4. While this statement is likewise dictum, it is cited with approval in *Bencoe Exporting & Importing Co., Inc.,* v. *McGraw Tire & Rubber Co.* (212 App. Div. 136), where the court stated: " The plaintiff asserts that subdivision 4 is not applicable but, assuming it to be applicable, defendant's position is untenable, since goods sold under a trade name must be at least as merchantable as the general run of such goods." (See, also, Williston on Sales, §§ 235, 236, 236-a, 242 and 245.)

Furthermore, the language of subdivision 4 does not expressly exclude the warranty of merchantability found in subdivision 2, but only the warranty of fitness for any particular purpose.

Having reached the conclusion that subdivision 4 does not exclude warranted merchantability, it may be well to determine what is meant by the latter term.

In *Howard & Ryckman* v. *Hoey* (23 Wend. 350) the court defines merchantability as " as least of medium quality or goodness."

Williston (§ 243), however, says: " In some cases it is indeed said that goods must be of ' medium quality,' but this seems to go too far."

Lord ELLENBOROUGH, in *Gardiner* v. *Gray* ([1815] 4 Campb. 144), says: " The intention of both parties must be taken to be, that it shall be saleable in the market under the denomination mentioned in the contract between them. The purchaser cannot be supposed to buy goods to lay them on a dunghill."

In *Kaull* v. *Blacker* (107 Kan. 578), which involved the sale of flour, it was stated: "There is, therefore, an implied warranty that it will make bread."

In *McNeil & Higgins Co.* v. *Czarnikow-Rienda Co.* (*supra*) the opinion says: "The sugar must have been of merchantable quality which means a good enough delivery to pass generally under that description after full examination."

In *McClung* v. *Kelley* (21 Iowa, 508) it is said that the article shall not have any remarkable defect.

In *Polly* v. *Arony* (172 N. Y. Supp. 305; affd., 188 App. Div. 886) section 96, subdivision 4, is construed, and it is stated: "If the article sold is designated by a particular brand * * * the obligation of the seller is fulfilled if he delivers goods known by that brand although they are not in fact of good quality * * * provided the goods delivered are of merchantable quality."

It would seem, therefore, that a watch that will not keep time, a pen that will not write, and tobacco which will not smoke cannot be regarded as merchantable under such names.

Prior to the Sales Act, it was held in *Julian* v. *Laubenberger* (16 Misc. 646) that the seller was not liable for food sold in sealed cans when it was known to the buyer that the seller had not prepared it, had not inspected it, and was ignorant of the contents of the can. This, however, is no longer the law of this State.

Previous to the Sales Act there was liability upon the manufacturer but not upon the dealer. The Sales Act, however, has brought about the change, for the act expressly refuses to distinguish between manufacturers, growers and dealers. (Williston, § 233; *Rinaldi* v. *Mohican Company, supra.*) In this latter case the court did not pass upon the question as to what would be the law if the article sold was in the original package bought by the vendor from others. Disposition could be made of this branch of the case on the theory that there is no inference from the facts pleaded that the package was sealed, and that, therefore, there was opportunity by the seller for examination of the tobacco. Assuming, however, that the package was in a sealed container, I have come to the conclusion that the complaint states a cause of action for breach of the implied warranty that the tobacco was of merchantable quality.

In *Ward* v. *Great Atlantic & Pacific Tea Co.* ([1918] 231 Mass. 90) (a Sales Act case) the defendant, a retail grocer, was held liable on the theory of warranty under subdivision 1, where there was sold a can of "Grandmother's Brand A & P Beans and Pork with Sauce," and the purchaser suffered injury due to the biting of stones which were contained in the can. In the course of the opinion the

court stated: "There appears to us to be no sound reason for engrafting an exception on the general rule, because the subject of the sale is canned goods, not open to the immediate inspection of the dealer, who is not the manufacturer, any more than of the buyer."

And Williston (in § 242) states: "According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of a reputable brand."  (See, also, § 235.)

In *Lieberman* v. *Sheffield Farms-Slawson Decker Co., Inc.* (117 Misc. 531), the court held the defendant liable for breach of an implied warranty of fitness of milk even though the seller was a distributor of the product, but the actual bottling and sealing was done by others.

In *Cohen* v. *Dugan Bros., Inc.* (*supra*), the affirmance of the judgment for a reduced amount was a recognition by the Appellate Division of plaintiff's right to recover of the retailer on the theory of implied warranty, where the article sold was a loaf of bread sealed in a wax wrapper.

Fitness for consumption in food cases is equivalent to the " particular purpose " for which food is ordinarily bought from a retailer. Thus the food cases may be brought under subdivision 1 of section 96 of the Personal Property Law.   It is also equivalent to the general purpose for which food is usually sold to the consumer.   In this sense it is the same as merchantability.   Williston (in § 235) states " that fitness for a particular purpose may be the equivalent of merchantability."

If subdivision 1 of section 96 may not be used to impose liability because of the use of the trade name, subdivision 2 is applicable, and a seller, whether he be the manufacturer of or the dealer in food or anything else, cannot escape liability by attaching a trade name or patent name to his article.   This accords with Williston's general statement, that the Sales Act has increased the liability of vendors (§ 248).   Without deciding, therefore, that tobacco is food, it is a fair analogy justifying the conclusion that it is purchased for the specific purpose of being smoked and if it is not fit for such purpose it does not satisfy subdivision 1.   If, however, that subdivision be inapplicable because of the use of a trade name it does not satisfy subdivision 2, being unfit for its general purpose, which is the equivalent of merchantability.

The liability against the retailer is predicated upon the breach of an implied warranty.   While, as previously stated, there was no liability at common law, the Personal Property Law (§ 96) has changed the rule.   Liability may no longer be confined to situations where the seller has prepared the goods, or has inspected it, or was

cognizant of the contents of the container. The Legislature has said: " § 96, subd. 2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that goods shall be of merchantable quality."

It provides for no exceptions. To hold otherwise would be to adopt a narrow construction which ignores the letter of the statute. Such a construction places liability upon the dealer who may recoup himself, in case of loss, against the manufacturer.

The orders appealed from are affirmed, with ten dollars costs and taxable disbursements.

CROPSEY, J., concurs.