THERESA MEDITZ, Plaintiff, *v.* LIGGETT & MYERS TOBACCO COMPANY, Defendant.

City Court of New York, Trial Term, New York County, January 29, 1938.

*Samuel P. Ulanoff*, for the plaintiff.

*Townsend & Lewis*, for the defendant.

RYAN, J. On October 16, 1936, the plaintiff bought a package of cigarettes wrapped in cellophane and sealed with the government tax stamp. On the following day, about one P. M., the plaintiff broke the cellophane covering and the government stamp and gave to her sister a cigarette from the package which she had purchased. She then took one of the cigarettes herself. The plaintiff smoked the cigarette about half way through when an explosion occurred, as she describes it, like a fire cracker, and burned both her cheeks, nose and eyebrows. Plaintiff called in a doctor who gave her balm to alleviate the burn. Plaintiff testified that this doctor visited her four times and that she went to his office six times, and that she paid him twenty-four dollars. The remnant of the cigarette that exploded was introduced in evidence, also a piece of wood that the plaintiff testified came from the cigarette, about one-sixteenth of an inch square and three-eighths of an inch long. The defendant's counsel, looking at this exhibit, stated that it was like the end of a match. The plaintiff said that the burns on her face and lips lasted from three to four weeks; that she was earning about twenty-five dollars a week at this time and that by reason of the nervous condition caused by the explosion of the cigarette she could not work for three weeks.

The plaintiff's sister corroborated the testimony given by the plaintiff, as she was present when her sister broke the cellophane wrapper and the government seal and gave her the first cigarette from this package. On cross-examination, however, the plaintiff admitted that she went to the office of the defendant's counsel on November 29, 1936, and that the only evidence of the accident was a scar on her nose.

The defendant produced only one witness, who stated that he was the designer of the cigarette machine used by the defendant. This witness identified the plaintiff's exhibit and admitted that the package showed that it was made at the defendant's plant, No. 25, in Richmond, Va. He admitted that the cigarette tobacco at this plant had two tests to eliminate foreign matter. The first was a whirling machine, the object of which was to remove splinters and stems of the tobacco. He testified that it was " difficult " for anything to go past this whirling machine. After the whirling machine the tobacco was passed over a conveyor belt and there inspected by hand. The witness also said that he had seen splinters and bird's eyes of the tobacco thrown out, and that the whirling machine was " apt to throw it out." He also said that he only knew of the " theory " of throwing out foreign substances. This

witness also stated that when the tobacco was inspected on the conveyor belt that at times there was as much as ten pounds of tobacco on the belt, and that the human eye would not necessarily see a match imbedded in such tobacco. From this testimony there is no doubt in my mind that the plaintiff bought this sealed package of cigarettes from a retailer who in turn had been supplied with same by the defendant manufacturer and that the cigarette exploded as described.

The question involved, while not novel, presents an interesting proposition in view of the manner in which the doctrine laid down in the *MacPherson* case (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382) is being extended by the courts and a review of the authorities may be in order.

In the case of *Matter of Jacobs* (98 N. Y. 98), EARL, J., writing for the court, in January, 1885 (at p. 113), said: "We must take judicial notice of the nature and qualities of tobacco. It has been in general use among civilized men for more than two centuries. It is used in some form by a majority of the men in this State, by the good and bad, learned and unlearned, the rich and the poor."

Since the above opinion was written, tobacco in the form of cigarettes is extensively used by women. We, therefore, have a manufactured product in use by both men and women running into almost countless numbers.

In March, 1916, the Court of Appeals decided the *MacPherson* case (*supra*), CARDOZO, J., writing for the majority of the court. There the plaintiff bought an automobile from a dealer, and shortly thereafter, while driving same, a wheel collapsed causing the plaintiff to sustain injuries. The action was brought against the manufacturer, and, in an exhaustive opinion the court held the defendant liable. At page 389 of the opinion, it is stated: "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

That decision has caused wide discussion by reason of the test as to whether the article made by a defendant is reasonably certain, if negligently made, to be a "thing of danger."

Following and extending the doctrine of the *MacPherson* case let us refer to another one in the Court of Appeals decided quite recently (December 31, 1936) where a coffee urn with a defective

handle was held to be a " thing of danger." The facts in which were that the plaintiff bought a coffee urn from a retailer which had been manufactured by the defendant and as he was taking it off the stove filled with a boiling liquid the handle broke and his hand was severely burned. The court at Trial Term directed a verdict in his favor for $3,000. The extent of his injuries and the time of his incapacitated condition were corroborated at the trial. The judgment of the Appellate Division affirming the court below was affirmed by a divided court, writing no opinion, CRANE, J., dissenting in a memorandum. (*Hoenig* v. *Central Stamping Co.,* 247 App. Div. 895; affd., 273 N. Y. 485.)

Research discloses a number of cases in different jurisdictions in which the manufacture and use of tobacco in divers forms was the subject-matter.

Referring first to the case of *Foley* v. *Liggett & Myers Tobacco Co.* (136 Misc. 468; affd., 232 App. Div. 822). There the complaint was based on the negligence of the defendant, and alleged that after smoking part of the tobacco the plaintiff found a dead mouse in the can. The court at Special Term held that the complaint stated a cause of action, which was affirmed on appeal.

In another case the plaintiff had purchased a plug of chewing tobacco manufactured by the defendant and in biting off a piece of the tobacco he bit into a worm that had many stingers, about one hundred of which got into his mouth. According to the testimony the stingers were dry and firm and became imbedded in his mouth, lips, tongue and gums, causing inflammation from the poison and because of which he could not work. Unable to remove the stingers the plaintiff had recourse to a doctor who finally removed them. The jury awarded a verdict of $800. At page 69 the court held that although tobacco was not a food, it acts upon the nerves, and the nerves are to be considered no less than the stomach in which the food acts, saying: " The juices from the chewing of tobacco do in fact find their way to the stomach, and poison in chewing tobacco is no less dangerous to health than poison in chewing gum or a liquid taken for its effect on the nerves." (*Liggett & Myers Tobacco Co.,* v. *Rankin,* 246 Ky. 65; 54 S. W. [2d] 612.)

In a similar case a judgment in favor of the appellee was affirmed, where he purchased a plug of tobacco from a retail store, manufactured by the appellant tobacco company, and in biting into the tobacco filled his mouth with fine sharp steel filings, as a result of which he was confined to his bed for one week. The jury awarded him a verdict. The appeals court held it could see no difference

between this tobacco case and the food cases. (*Liggett & Myers Tobacco Co.* v. *Wallace*, [Tex. Cir. App.] 69 S. W. [2d] 857.)

Another case involving chewing tobacco manufactured and sealed by the defendant is that of *Pillars* v. *Reynolds Tobacco Co.* (117 Miss. 490; 78 So. 365). There the plaintiff purchased some of the tobacco and found upon biting into it a decomposed human toe embedded therein. The plaintiff consulted a physician, who testified that his patient exhibited all the characteristic symptoms of ptomaine poisoning. At page 499 the court commented on the similarity between the use of tobacco and the leading food cases and stated: " We can imagine no reason why, with ordinary care human toes could not be left out of chewing tobacco, and if toes are found in chewing tobaccos, it seems to us that somebody has been very careless."

The court affirmed the judgment for the plaintiff against the manufacturing defendant.

To the same effect are the cases of *Reynolds Tobacco Co.* v. *Loftin* ([Miss.] 99 So. 13) where a partially decomposed snake was found in the tobacco. Judgment was awarded the plaintiff in the sum of $1,500 which was reduced by the appellate court to $500 and affirmed. And that of *Corum* v. *Reynolds Tobacco Co.* (205 N. C. 213; 171 S. E. 78), where the plaintiff was injured by a fish hook embedded in a sealed package of tobacco and which caught in the inner side of his lip as he bit into the tobacco. A judgment of $1,200 was awarded the plaintiff which was affirmed on appeal. At page 217 of the report the North Carolina court referred with approval to the *MacPherson* case (*supra*) and followed it as a leading authority, and also applied the doctrine of the food cases to this chewing tobacco case.

For the application of the rule as to the manufacturers of food products where no contractual relationship exists with third persons, see, also, *Chysky* v. *Drake Bros., Inc.* (192 App. Div. 186 [1st Dept.]); *Rosenbusch* v. *Ambrosia Milk Co.* (181 App. Div. 97 [1st Dept.]); *Ternay* v. *Ward Baking Co.* (167 N. Y. Supp. 562 [App. Term, 1st Dept.]); *Cohen* v. *Dugan Bros.* (132 Misc. 896, COTILLO, J., and 26 C. J. 785, § 93).

The presence of the substance in the cigarette contained in a sealed package when delivered to the plaintiff is an evidential fact from which negligence may be inferred. The defendant by its proof sought to overcome the inference of negligence raised by the plaintiff, but in my opinion was unsuccessful.

The issue of fact must therefore be resolved in favor of the plaintiff and the defendant held responsible for the contents of this

package of cigarettes manufactured at its plant at Richmond, Va. In reaching this conclusion I have not overlooked the decision of the Appellate Term, First Department, in the recent case of *Block* v. *Liggett & Myers Tobacco Co.* (162 Misc. 325), in which case the plaintiff purchased a sealed package of cigarettes manufactured by the defendant and found in one of the cigarettes a sharp piece of razor blade that cut his lip when he was smoking. The Appellate Term by a divided court dismissed the complaint. An examination of the case as reported shows that it was decided on January 15, 1937, and the court no doubt did not have before it the *Hoenig* case (*supra*), decided two weeks before, nor those authorities from other jurisdictions hereinabove referred to.

From an examination of the many authorities on the subject under discussion, the conclusion may fairly be drawn that the extension of the rule is for the protection of the health of the people, and to insure scrupulous care in the preparation of those articles of commerce so as to reduce to a minimum all danger to those using them as they were designed to be used. Anything intended to be taken into the human system should be free of those elements which may endanger the life or health of the user.

Certainly, a cigarette containing an explosive substance may be considered a " thing of danger."

As to the measure of damages, the following authorities are worthy of consideration: *Katz* v. *Brooklyn Heights R. Co.* (35 Misc. 302); *Rosenswaike* v. *Interborough Rapid Transit Co.* (175 N. Y. Supp. 828), and *DeYaulus* v. *New York City R. Co.* (49 Misc. 648).

In the case at bar, however, the plaintiff did not produce as a witness the physician who she testified attended her after the explosion of the cigarette, nor was his absence satisfactorily accounted for. Therefore, " the failure to call him as a witness might be regarded by the jury as sufficient not only to permit but to compel an inference unfavorable to the plaintiff, if they had been allowed to consider the fact." (*Minch* v. *New York & Queens Co. R. Co.*, 80 App. Div. 324, 326.)

To the same effect reference may be made to several cases in other jurisdictions. (*Johnson* v. *Demange-Goodman Co.*, [La. App.] 141 So. 779; *MacPherson* v. *Hillyer Deutsch-Edwards Co.*, [La. App.] 143 id. 89; *Donet* v. *Prudential Ins. Co.*, [Mo. App.] 23 S. W. [2d] 1104; *Griggs* v. *Saginaw & Flint R. Co.*, 196 Mich. 258; 162 N. W. 960; *Nelson* v. *Public Service Transp. Co.*, 5 N. J. Misc. 73; 135 A. 467; and *Vaughan* v. *Memorial Hospital*, 100 W. Va. 290; 130 S. E. 481.)

The failure of the plaintiff to produce her attending physician leads me to a not favorable inference concerning her testimony

bearing on the extent of the pain allegedly suffered and the injuries to her cheeks, nose and eyebrows, therefore, judgment is directed in favor of the plaintiff and against the defendant in the sum of $250.

The importance of the principle involved in this case has impelled me to examine numerous and leading authorities, first having in mind the fact that so many people are now smoking cigarettes; second, that a judgment against the defendant may be construed as damaging its product and third, because of the duty of the court to protect the plaintiff.

For the information of those who may desire to further explore the subject beyond the scope of this memorandum, attention is directed to the notes in 17 A. L. R. 672; 39 id. 992; 88 id. 527, on the liability of the manufacturer or packer of a defective article for injury to person or property of the ultimate consumer, who purchased from a middleman. And to the notes on cases on the presumption of negligence from foreign substances in food, found in the annotations in 4 A. L. R. 1559; 47 id. 148 and 105 id. 1039. (See, also, abstract from 24 Va. Law Rev. 134, Dec. 1937, appearing in Current Legal Thought, Dec. 1937, issue, p. 164.)

Judgment is directed in favor of the plaintiff and against the defendant in the sum of $250. Exception to defendant. Fifteen days' stay and thirty days to make a case.