42 N.J. Super. 313 (1956)
126 A.2d 358
GWENDOLYN B. ADAMS, PLAINTIFF-APPELLANT,
v.
PETER TRAMONTIN MOTOR SALES, INC., A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1956.
Decided November 2, 1956.
*315 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. David Cohn argued the cause for appellant (Mr. Albert L. Cohn, on the brief).
Mr. John W. Hand argued the cause for respondent (Mr. Peter N. Perretti, attorney; Mrs. Serena Bowen, on the brief).
*316 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Appeal from a judgment of involuntary dismissal granted on defendant's motion at the close of plaintiff's case in a county district court action for damages for breach of express warranty and implied warranty in connection with the defendant's sale of a 1955 Pontiac automobile. The matter comes before us on a statement of the evidence, findings of fact and conclusions of law, prepared and filed by the trial judge.
The amended complaint is in two counts. The first alleges that on November 4, 1955 defendant, a retail dealer in Pontiac automobiles, by its agents, servants and employees warranted to plaintiff that a 1955 Pontiac "was perfect for the purpose for which it was intended" and "completely free of mechanical defects"; that defendant made such warranties and representations to induce plaintiff to purchase, knowing the purpose for which the car was intended, and that plaintiff relied upon them; that she used the Pontiac in accordance with defendant's directions, representations and warranties, and found the car not fit for the required purpose. The second count sets up implied as well as express warranties by defendant that the automobile sold was fit for the purpose intended; that plaintiff, relying upon defendant's skill, judgment, warranties and representations, bought and used the car and, by reason of its defective condition, incurred expenditures.
Plaintiff testified that on the evening of November 4, 1955 she, her uncle and mother, visited defendant's salesroom where the manager showed her a new 1955 Pontiac. In the course of their discussion he said, "This car is perfect for you, you couldn't buy a better car." She signed the necessary papers for the purchase of the car the same evening. It was delivered a few days later, after certain other formalities had been completed. Plaintiff further testified that the manager informed her there was a 90-day guarantee with the car "in case anything went wrong." Although the guarantee and a certain booklet received with the car were referred *317 to in the course of her testimony, neither was received in evidence.
Plaintiff's story was that soon after receiving the car she noticed the interior was dirty and she had trouble with the speedometer cable; three days later she noticed a rumble in the rear of the car; two or three weeks after delivery she found black smoke coming from the exhaust, the car stalled and the motor missed; the door locks and tumblers were defective and had to be replaced; the dome light did not work and the dashboard shook. She complained to defendant's service manager on each occasion and he asked her to bring the car back for repair. She did so seven or eight times. Asked whether defendant had ever refused to take care of repairs, she replied, "They never said they weren't liable."
Plaintiff's only other witness was her uncle, who testified that the motor missed and there was a rumbling noise in the rear some three or four days after the car was delivered. He took the car to defendant's shop where the springs were oiled, but he still heard the same noise. Two weeks later he brought the car back because of a missing motor, and after defendant had replaced the spark plugs the Pontiac ran "pretty good." The next day he took it in because of the rear noise. The record is silent as to what was done on this last occasion, but apparently there was no further complaint. The uncle testified that defendant never said that "they wouldn't fix it"  "They always fixed it."
Plaintiff's attorney having rested his case, defendant moved to dismiss the complaint. The trial judge concluded as a matter of law that the statement and actions of the defendant, by its agents or servants, did not spell out an express warranty, and since plaintiff had purchased a specific article, namely a Pontiac automobile, under its trade name, there was no implied warranty as to its fitness for any particular purpose. Plaintiff thus having shown no right to relief, he granted defendant's motion and entered judgment in its favor.
The express warranties upon which plaintiff relies are the manager's statement that "This car is perfect for you, *318 you couldn't buy a better car," and the 90-day guarantee that went with the car "in case anything went wrong."
R.S. 46:30-18, which is identical with the provisions of section 12 of the Uniform Sales Act, provides:
"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty."
The manager's statement was nothing more than dealers' talk or puffing, and falls within the second sentence of the quoted section, which reflects the ancient maxim, simplex commendatio non obligat  mere recommendation does not bind. What he said was not an "affirmation of fact or any promise." See, generally, 40 Am. Jur., Sales, § 326, p. 506 et seq. (1943); 77 C.J.S., Sales, § 310(c), p. 1140 et seq. (1952); 1 Williston on Sales (rev. ed. 1948), § 202, p. 517, and see § 203, p. 518 et seq., n. 16, for contrasting decisions of statements of fact and of opinion. Compare the puffing in this case with the seller's representation in Diepeveen v. Larry Vogt, Inc., 27 N.J. Super. 254 (App. Div. 1953), that the plant bulbs were "of first grade quality," and in St. George v. Grisafe, 38 N.J. Super. 297 (App. Div. 1955), that the tractor was in perfect condition, "A-1"  held to be representations of fact regarding the product and hence express warranties.
The statement here was directed not at the product, but at the personal taste of the buyer, and was clearly an expression of only the seller's opinion as to the suitability of the car for plaintiff's general requirements. Whether the Pontiac was indeed "perfect" for plaintiff and whether she "couldn't buy a better car" were matters on which she reasonably could be expected to have an opinion of her own, and to exercise her judgment. That being so, the manager's statement did not amount to an express warranty. Cf. *319 Spencer Heater Co. v. Abbott, 91 N.J.L. 594, 596 (E. & A. 1918).
There being no doubt whether the statement was an expression of opinion, rather than a statement of fact, a jury question was not presented. It was therefore for the court to declare the judgment upon this phase of the case which the law imposes. Long v. Board of Chosen Freeholders of Hudson County, 10 N.J. 380, 386 (1952).
Defendant concedes that the fact there was a 90-day guarantee that went with the car "in case anything went wrong" was evidence of the existence of a warranty. Middlesex Furniture Co. v. Turner, 3 N.J. Misc. 685, 129 A. 465 (Sup. Ct. 1925). It contends, however, there is no evidence tending to prove this express warranty was made prior to the completion of the sale, and plaintiff failed to show, prima facie, any consideration that would support the warranty, citing Middleton v. Kavanagh, 9 N.J. Misc. 906, 155 A. 745 (Sup. Ct. 1931), and Manasquan Gravel Co. v. Ross, 73 N.J.L. 506 (Sup. Ct. 1906). See also 1 Williston on Contracts (rev. ed. 1936), § 142, p. 508, and n. 2. Further, the 90-day guarantee having been made after the sale, it could not, in the language of R.S. 46:30-18, have had the natural tendency to induce the sale, and hence serve as a warranty. This being a case where defendant successfully moved to dismiss the complaint at the close of plaintiff's case, plaintiff is entitled to every reasonable and logical inference that can be drawn from the evidence. We have nothing more before us than the summary of evidence prepared by the court, but viewing it in a light most favorable to plaintiff, the reasonable inference can be drawn that the manager's statement of a 90-day guarantee was made during the conversation preceding the sale. There was thus an express warranty. Having been made at the time of the sale, it was part of the entire contract, the price paid for the car constituting the consideration. McCauley v. Ridgewood Trust Co., 81 N.J.L. 86, 88 (Sup. Ct. 1911).
It was agreed at the oral argument that the guarantee was a warranty that if anything went wrong with the car *320 within 90 days after sale, or if any part proved defective, defendant would make the necessary repair or replacement. Such a guarantee is common in the business of selling new cars. It is to be presumed that its ordinary meaning, as exemplified in the conduct of that business, is that which the parties intended and understood, absent any express showing of a different meaning.
There was no proof that defendant failed to repair any particular defect brought to its attention by plaintiff. In fact, the evidence is all the other way. There was no breach of the warranty. Middlesex Furniture Co. v. Turner, above.
Plaintiff next urges that an implied warranty as to the car's quality and fitness should have been found under the circumstances here present. On this point R.S. 46:30-21, our counterpart of section 15 of the Uniform Sales Act, provides:
"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.
(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

* * * * * * * *
(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

* * * * * * * *"
This section merely declares and codifies the common law. Simon v. Graham Bakery, 17 N.J. 525, 528-529 (1955).
The fact that a buyer sues on an express warranty does not necessarily forclose suit on an implied warranty also. R.S. 46:30-21(6) provides that "An express warranty or condition does not negative a warranty or condition implied under *321 this chapter unless inconsistent therewith." See 46 Am. Jur., Sales, § 334, p. 516 et seq.; 77 C.J.S., Sales, § 316(b), p. 1162; 1 Williston on Sales (rev. ed. 1948), §§ 239(a), 239(b), p. 625 et seq. Defendant's guarantee was a limited undertaking: for 90 days it would repair the car or replace defective parts. Can it be said that it thus freed itself of all possible liability for breach of an implied warranty of fitness or of merchantability such as may in certain circumstances be raised up under R.S. 46:30-21? We cannot accept that conclusion as a general proposition, or in this case. The 90-day guarantee did not exclude the possibility of an implied warranty, nor was it in our opinion clearly inconsistent therewith. We proceed, then, to consider plaintiff's alternate claim of implied warranty.
There is not the slightest question that the car plaintiff purchased was bought under its trade name, Pontiac. That is the only make of new car defendant dealt in, and plaintiff by her own admission knew it. The sale being one of a specified article under its trade name, there was, by reason of the express provisions of the fourth paragraph of R.S. 46:30-21 quoted above, no implied warranty as to its fitness for any particular purpose under paragraph (1) of the same section, plaintiff having exercised her own judgment in the selection of the Pontiac and not relying on defendant's judgment regarding its suitability for her purpose. And see Williston, op. cit., § 236(a), p. 614 et seq.
But was there an implied warranty of merchantability? "Merchantability" has been defined as meaning that the article sold should be reasonably suitable for the ordinary uses it was manufactured to meet, Giant Mfg. Co. v. Yates-American Machine Co., 111 F.2d 360 (8 Cir. 1940); that the article sold should be of the general kind described and reasonably fit for the general purpose for which it should have been sold, Keenan v. Cherry & Webb, 47 R.I. 125, 131 A. 309 (Sup. Ct. 1925). Distinguishing between the implied warranty of merchantability and that of fitness for a particular purpose, the court in Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 23 F.2d 416, 419 (2 Cir. 1928), *322 certiorari denied 277 U.S. 599, 48 S.Ct. 560, 72 L.Ed. 1007 (1928), said:
"* * * A warrant of merchantability is a warranty that the goods are reasonably fit for the general purpose for which they are sold, while a warranty of fitness is a warranty that the goods are suitable for the special purpose of the buyer, which will not be satisfied by mere fitness for general purposes. * * *"
In Outhwaite v. A.B. Knowlson Co., 259 Mich. 224, 242 N.W. 895 (Sup. Ct. 1932), it was said that "when applied to articles of general sale under patent or trade names and by retailers, so that the implied warranty of fitness for a particular purpose is eliminated, the natural meaning [of merchantability] is that it refers to such as are usually sold upon the market." For a general discussion of what is meant by "merchantability," see Foley v. Liggett & Myers Tobacco Co., 136 Misc. 468, 241 N.Y.S. 233 (Sup. Ct. 1930), affirmed 232 App. Div. 822, 249 N.Y.S. 924 (App. Div. 1931).
The great weight of authority in the relatively few cases which have passed on the point is that section 15 of the Uniform Sales Act (see our R.S. 46:30-21(4)), denying an implied warranty as to fitness for a particular purpose in the case of a sale under a trade name, does not negative an implied warranty of merchantability arising in the case of such a sale. Giant Mfg. Co. v. Yates-American Machine Co., above, 111 F.2d 360 (8 Cir. 1940); Pabellon v. Grace Line, Inc., 191 F.2d 169 (2 Cir. 1951); certiorari denied Coston Supply Co. v. Pabellon, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951); Parker v. S.G. Shaghalian & Co., Inc., 244 Mass. 19, 138 N.E. 236 (Sup. Jud. Ct. 1923); Raymond Syndicate, Inc. v. American Radio & Research Corp., 263 Mass. 147, 160 N.E. 821 (Sup. Jud. Ct. 1928); Botti v. Venice Grocery Co., 309 Mass. 450, 35 N.E.2d 491, 135 A.L.R. 1387 (Sup. Jud. Ct. 1941); Poulos v. Coca Cola Bottling Co. of Boston, 322 Mass. 386, 77 N.E.2d 405 (Sup. Jud. Ct. 1948); Outhwaite v. A.B. Knowlson Co., supra, 259 Mich. 224, 242 N.W. 895 (Sup. Ct. 1932); Ryan *323 v. Progressive Grocery Stores, Inc., 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (Ct. App. 1931) (Cardozo, C.J.); Bencoe Exporting & Importing Co. v. McGraw Tire & Rubber Co., 212 App. Div. 136, 208 N.Y.S. 4 (App. Div. 1925); Foley v. Liggett & Myers Tobacco Co., above, 136 Misc. 468, 241 N.Y.S. 233 (Sup. Ct. 1930), affirmed 232 App. Div. 822, 249 N.Y.S. 924 (App. Div. 1931); Kelvinator Sales Corp. v. Quabbin Improvement Co., Inc., 234 App. Div. 96, 254 N.Y.S. 123 (App. Div. 1931); Dow Drug Co. v. Nieman, 57 Ohio App. 190, 13 N.E.2d 130 (Ct. App. 1936); J.A. Campbell Co. v. Corley, 140 Or. 462, 13 P.2d 610, 14 P.2d 455 (Sup. Ct. 1932); Sperry Flour Co. v. De Moss, 141 Or. 440, 18 P.2d 242, 90 A.L.R. 406 (Sup. Ct. 1933); Frantz Equipment Co. v. Leo Butler Co., 370 Pa. 459, 88 A.2d 702 (Sup. Ct. 1952); Knapp v. Willys-Ardmore, Inc., 174 Pa. Super. 90, 100 A.2d 105 (Super. Ct. 1953); D'Onofrio v. First National Stores, Inc., 68 R.I. 144, 26 A.2d 758 (Sup. Ct. 1942). And see Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 A.2d 181 (Sup. Ct. Err. 1940). The rule is the same under the English Sale of Goods Act. Bristol Tramways & Carriage Co. v. Fiat Motors, Ltd., [1910] 2 K.B. 831; Morelli v. Fitch & Gibbons, [1928] 2 K.B. 636. Williston puts it this way:
"Though the buyer by selecting goods sold under a patent or trade name cannot have an implied warranty that they are fit for his special purpose he may nevertheless rely on the seller for furnishing goods that are properly manufactured and are fit for the general purpose for which they are manufactured. In such a case the statement of the English court [in Bristol Tramways & Carriage Co. v. Fiat Motors, Ltd., above] is sound: `The implied condition [i.e. warranty] that the goods are of merchantable quality applies to all goods bought from the seller who deals in goods of that description, whether they are sold under a patent or trade name or otherwise.' The American authorities under the Sales Act support the statement." 1 Williston on Sales (rev. ed. 1948), § 236(a), pp. 616-617.
And see, generally, 46 Am. Jur., Sales, § 344, p. 527 et seq.; 77 C.J.S., Sales, § 327, p. 1184.
*324 Accordingly, while there was no implied warranty as to the fitness of the Pontiac for any particular purpose under the facts of this case, R.S. 46:30-21(4), there was an implied warranty that it would be of merchantable quality.
It was plaintiff's contention, made in the course of the oral argument, that there was a sale by description, because what she did was designate the particular model and color of the car she wanted, albeit by its trade name, and hence R.S. 46:30-21(2) would apply. Under these conditions there is some authority that the sale was not one by description. Williston, for example, states (op. cit., § 225, p. 577) that "* * * if goods are seen by the buyer and he agrees to purchase those goods, it is not a sale by description under any definition, yet adopted, although the buyer's inspection could reveal nothing because the defect in quality was latent, and the seller's description was the inducement to the sale." And cf. 4 Williston on Contracts (rev. ed. 1936), § 1008, p. 2721. However, Williston's position does not appear to be generally accepted. See, for example, Prosser, "Implied Warranty of Merchantable Quality," 27 Minn. L. Rev. 117, 143 (1943); Kohn v. Ball, 36 Tenn. App. 281, 254 S.W.2d 755 (Tenn. Ct. App. 1952) (sale of a new Buick); Knapp v. Willys-Ardmore, Inc., above, 174 Pa. Super. 90, 100 A.2d 105 (Super. Ct. 1953) (sale of a new Willys station wagon). The court in Kohn said:
"The term sale by description strictly means an executory sale where the article is not present, but the term has been broadened to include all sales, whether or not the goods are present, where there is no adequate opportunity for inspection. 21 A.L.R. 373; 168 A.L.R. 391, 414."
We do not, however, agree that the sale here was one "by description," so that plaintiff did not have an implied warranty of merchantability under the second paragraph of R.S. 46:30-21.
Under the implied warranty of merchantability it was defendant's obligation to deliver a 1955 Pontiac of the same *325 quality, material, workmanship and availability for use as other cars generally sold under that name. Frantz Equipment Co. v. Leo Butler Co., above, 370 Pa. 459, at pages 465-466, 88 A.2d 702. The car had to be reasonably fit for the ordinary uses it was manufactured to meet. But the requirement that the car be merchantable does not mean that it be a car perfect in every detail. It has been said that
"The requirement when it exists that goods shall be merchantable does not require that the goods shall be of first quality or even that they shall be as good as the average of goods of the sort. * * * [T]he buyer cannot claim more than that the goods with their defects known shall be saleable as goods of the general kind which they were described or supposed to be when bought; or shall be reasonably suitable for the ordinary uses for which it was manufactured." 1 Williston on Sales (rev. ed. 1948), § 243, pp. 641-642, and notes 9 and 11.
Mones v. Imperial Bottling Works, Inc., 14 N.J. Misc. 369, 185 A. 483 (Sup. Ct. 1936).
The Pontiac here involved met the test of merchantability. It was reasonably suitable for ordinary use, and was in fact used to meet plaintiff's daily needs. It possessed no remarkable defect (McClung v. Kelley, 21 Iowa 508, 512 (Sup. Ct. 1866)); it was the average new car which one has come to expect in a mass-production era capable of producing over seven million automobiles a year. It was a car that required the usual "shakedown" period and relatively minor adjustments to put it in good working order. The motor had to be adjusted, loose elements tightened, the locks corrected, the dome light fixed, and a rumbling noise eliminated. All this was done. The record shows, as noted, that whatever repairs and adjustments had to be made were admittedly taken care of by defendant, willingly and promptly. Whatever plaintiff's dissatisfaction with her new Pontiac (she describes it as a "non-vegetative member of the citrus family"  euphemistic longhand for what the trade bluntly calls a "lemon"), there is nothing in the record which spells out a breach of the implied warranty of merchantability.
*326 We are not insensible to the fact that the complaint does not refer specifically to this type of implied warranty. It speaks generally of an implied warranty of "quality," of "fitness." However, we have considered the implied warranty of merchantability as falling within the broad frame of reference of the case in order to explore whether plaintiff was denied substantial justice. She was not.
An independent ground for affirmance of the judgment is plaintiff's failure to prove any damages. Her counsel explained at the oral argument there was proof of damages, although this does not appear in the record. However, he conceded that he is bound by the statement of evidence prepared by the trial court.
Affirmed.