**CROWN CORK & SEAL COMPANY, Inc., a corporation, Plaintiff,**

v.

**HIRES BOTTLING COMPANY OF CHICAGO, a corporation, Defendant.**

**No. 64 C 748.**

United States District Court
N. D. Illinois, E. D.

March 24, 1966.

Julian I. Silvertrust, Carroll A. Teller, Howard M. Turner, Teller, Levit & Silvertrust, Chicago, Ill., for plaintiff.

Arthur Abraham, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This is an action by a seller against a buyer to recover a balance of payments under a conditional sales contract for purchase of certain used bottling equipment.

---

Defendant admits entering into a written agreement which states in part that the equipment would be purchased "as is, where is" and admits failure to pay remaining installments of the purchase price. Defendant raises the affirmative defense and counterclaim that Plaintiff misrepresented the quality of the equipment sold. Federal jurisdiction is based upon diversity of citizenship and the requisite jurisdictional amount is in controversy.

I have before me Plaintiff's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. I have examined matters of record in this cause and I hereby enter the following findings of fact and conclusions of law in response to Plaintiff's motion:

### Findings of Fact

(1) In September of 1958, the Plaintiff sold, by conditional sales contract, certain personal property, consisting of bottling equipment, to the Chicago Beverage Company. Under the terms of the agreement, title to the equipment was retained by the plaintiff until the full purchase price was paid by the purchaser.

(2) Sometime in March of 1962, the Chicago Beverage Company was adjudged a bankrupt in the United States District Court for the Northern District of Illinois, Eastern Division, in Case No. 62 B 3648, at which time there was due and owing to the Plaintiff a balance of approximately Thirty-Four Thousand Dollars ($34,000.00) for the equipment.

(3) Thereafter, from the time of the filing of the petition in bankruptcy in March of 1962, until the sale of the assets at public auction in August of 1962, the business of the Chicago Beverage Company, the bankrupt, was operated continuously, first by the debtor in possession, then by the Receiver in Bankruptcy, and thereafter by the Trustee in Bankruptcy, and, during this period, the assets and equipment of the plaintiff were in use in the operation of the business.

(4) When the assets of the Chicago Beverage Company, the bankrupt, were sold by the Trustee in Bankruptcy at public auction, one Max Holland, acting for the Hires Bottling Company of Chicago, the Defendant, purchased the assets subject to the conditional sales contract of the Plaintiff.

(5) On August 22, 1962, the Referee in Bankruptcy entered an order which, among other things, provided as follows:

(a) Allowed the Reclamation Petition of the Plaintiff.

(b) Found that there was due and owing to the Plaintiff on the conditional sales contracts the sum of $34,246.04.

(c) Ordered Max Holland, the purchaser of the assets of the bankrupt, and James S. Kennedy, Trustee in Bankruptcy, to turn over possession of the property to the Plaintiff, if payment of the amount due was not made in seven days from the date of the order.

(6) On August 28, 1962, the Defendant entered into a security agreement conditional sales contract with the Plaintiff for the purchase of the assets which had been reclaimed in the bankruptcy proceedings, and executed a series of twenty-four notes as evidence of the purchase price, the notes being payable monthly in a series during a period of twenty-four consecutive months, commencing September 28, 1962, and monthly thereafter, which notes provided for interest at the rate of six per cent and after default at the rate of seven per cent per annum. The first twenty-three notes in the series were each in the principal amount of $1,100.00, and the last note was in the principal amount of $1,389.61.

(7) Among the terms of the security agreement conditional sales contract was the following term, to wit:

"(j.) The property covered by this Security Agreement is sold to the Debtor under this Security Agreement, 'as is, where is'."

(8) Defendant paid Notes 1 through 14, inclusive, in the series, as the notes

became due, but has defaulted in the payment of Notes 15 to 20, inclusive, each of which was due upon the filing of the complaint.

(9) Plaintiff has exercised its option as provided in the agreement and had notified the Defendant that by virtue of the default in the payment of the notes, it has declared all of the notes to be due and payable.

(10) There is due and owing to the Plaintiff on account of Notes 15 through 24 the following amounts, to wit:

| | |
|---|---|
| Principal Amount | $11,289.61 |
| Interest to April 15, 1964 | 361.28 |
| Interest from April 15, 1964, to the Date of Rendition of Judgment | 1,525.79 |
| Total | $13,176.68 |

(11) Plaintiff has caused to be taken of the Defendant's Agents and employees the depositions of Arthur Holland, President of the Defendant, Abraham Drucker, an Attorney for the Defendant, and Irving Goldner, Office Manager and Production Manager of the Defendant, which depositions are on file in this cause.

(12) The Defendant has filed an answer and counterclaim setting forth as a defense and as a counterclaim:

(a) Fraud by the Plaintiff in inducing the Defendant to execute the notes and security agreement heretofore described.

(b) Breach of oral warranty that the equipment was in good and efficient working condition, would blend, bottle and prepare soft drinks and liquids of the Defendant in a good and efficient manner and would blend, prepare and produce, bottle and preserve soft drinks in a sanitary and potable condition.

(13) The only complaint the Defendant has with respect to the machinery in question was that it allegedly produced and bottled liquids which after several months developed a high bacterial count.

(14) No express warranties or representations were made concerning the ability of the machinery in question to bottle liquids free of bacterial content.

(15) All implied warranties were excluded by the "as is, where is" term of the security agreement because the circumstances indicate that the "as is, where is" term was a term of the contract which was the subject of negotiation.

(16) The Plaintiff refused to enter into the contract or accept the notes executed by the Defendant unless the "as is, where is" term appeared in the agreement.

(17) The Defendant had an opportunity to discuss the machinery with persons familiar with the equipment, not employed by the Plaintiff, prior to the execution of the security agreement and notes sued upon.

(18) On the date of the execution of the notes and security agreement (August 28, 1962), the Defendant had in its employ Irving Goldner, who had knowledge of the operating abilities of the machinery in question by virtue of the fact that he was one of the officers of Chicago Beverage Corporation, which had previously owned the equipment in question.

(19) The Plaintiff has committed no fraud in inducing Defendant to execute the contract. The circumstances surrounding the execution of the agreement fail to indicate any meaning for the words "as is, where is" other than to exclude all implied warranties.

Conclusions Of Law

(1) On October 28, 1964, I denied Plaintiff's motion for judgment on the pleadings on the ground that genuine issues of material fact were then in dispute.

(2) Rule 12(c) of the Federal Rules of Civil Procedure provides that " * * * If on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56

* * *" The previous ruling on the motion for judgment on the pleadings does not preclude a subsequent motion for summary judgment when matters outside the pleadings are presented to the Court.

(3) While it is clear that Defendant has admitted allegations contained in Paragraphs 1–11 of the complaint, Plaintiff, on January 4, 1965, filed a reply to the answer in which there are denials of several paragraphs of the counterclaim. These denials bring to issue the allegations of fraud in the counterclaim.

(4) I find that the following provision applies to the facts of this case. Section 2–316(3) (a) of the Illinois Commercial Code Ill.Rev.Stat. 1965, c. 26, § 2–316(3) (a) governs the disclaimer of implied warranties. That section states:

"Unless the circumstances otherwise indicate, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty;"

(5) From the depositions on file and the clause in the contract which states that "The property covered by this security agreement is sold to the debtor under this security agreement 'as is, where is' " and the fact that the equipment was purchased used, I conclude that there was a disclaimer of implied warranties within the meaning of Section 2–316(3) (a) of the Illinois Commercial Code.

(6) Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be alleged with particularity. The depositions on file, and the written contract which is attached as an exhibit in support of the motion for summary judgment, lead me to conclude that as a matter of law there has been no fraud as alleged in the counterclaim.

(7) The first sentence in Section 2–316(3) (a) cited above guides the Court to consider circumstances apart from those of the written contract. A review of those circumstances causes me to conclude that in the present controversy the parties are bound by the terms of the written contract.