111 N.J. Super. 383 (1970)
268 A.2d 345
GINDY MANUFACTURING CORPORATION, PLAINTIFF,
v.
CARDINALE TRUCKING CORP., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 27, 1970.
*384 Messrs. Zucker, Lowenstein, Gurny & Zucker for plaintiff (Mr. Milton Gurny on the Brief).
*385 Mr. Elvin R. Giordano for defendant.
BOTTER, J.S.C.
This is an action by the seller (Gindy) of twenty-five 1967 semi-trailers for a deficiency of $13,052.37 after repossession and resale following defendant's default in payment under a conditional sales contract. The defense and counterclaim are based on the assertion that the trailers were delivered with faulty radius rods which caused premature tire wear and consequent monetary loss.
The matter is before the court on plaintiff's motion for summary judgment. Plaintiff contends that the installment sales contract expressly excluded all warranties. Accordingly, plaintiff seeks a judgment for the amount of the deficiency, with interest and costs, and a dismissal of the counterclaim.
On or about June 1, 1967, the parties entered into a written installment sales contract in the total sum of $141,756, inclusive of finance charges. The contract, provided by plaintiff, was a one-page form contract with considerable close print. The only additions were by typewriter to show the name and address of the buyer, the various charges and installment payments involved, and the due date of the first installment. Also, in prominent position, a description of the trailers was typed in under various headings in the printed form as shown below, with the typewritten portions indicated by my use of italics:

New Or Make or Manufacturer's
 Used Year Trade Name Description Model Serial No.
 New 1967 Gindy semi-trailer C240AV9 38480 thru
 38504

The printed form also contained the following paragraph:
H. WARRANTIES. Buyer is buying the vehicle "as is" and no representations or statements have been made by Seller except as herein stated, so that no warranty, express or implied, arises apart from this writing. Buyer warrants that any property which is offered in trade for the vehicle is free from any lien, claim, encumbrance or security interest.
*386 Plaintiff contends that the above clause, particularly the provision that the vehicles are sold "as is," excludes all warranties. Plaintiff further contends that the recital in the contract that the "writing contains the full, final and exclusive statement of the agreement of the parties" precludes any modification by oral agreement or otherwise of the specific provision excluding warranties. There was also a separately signed provision that: "No modification of this contract may be made except in writing signed by Seller." Since defendant failed to meet installment payments due for May, June, July and August of 1968, defendant was in default under the agreement, and plaintiff had the right to repossess and resell the trailers and sue for the deficiency. The only question, therefore, is whether defendant can assert as an offset or by way of counterclaim damages caused by the alleged defects in the vehicles furnished.
Defendant asserts that it has been doing business with Gindy for 20 years and had purchased hundreds of trailers, none of which were purchased "as is." Defendant asserts that in past dealings with Gindy and in accordance with the custom of the trade all defects in the manufacture of the trailers were the responsibility of Gindy. Defendant further asserts that in the past Gindy did correct at its own cost manufacturing defects whenever they appeared; that in the present transaction, when the defect caused by faulty radius rods appeared, Gindy agreed to replace them and ordered defendant to take the trailers to the Husky Trailer Company with whom Gindy contracted to have the repairs made at Gindy's expense; that Gindy sent new parts to be installed in the trailers in question in replacement of the defective parts; that every trailer which defendant purchased from Gindy was purchased brand new; that Gindy knew defendant's operation and, in fact, when Gindy started in business the founders of defendant corporation helped Gindy in designing the trailers; that defendant was not aware of the existence of the "as is" provision in the contract; that on June 12, 1967 another installment sales contract in an amount *387 in excess of $200,000 entered into with Gindy by a corporation related to defendant did not have an "as is" clause; that the inclusion of the "as is" clause is contrary to the custom in the trade which provides implied warranties that all new equipment will perform as represented and will do the job for which it was purchased; that used equipment may be purchased "as is," and the absence of warranties in such case is reflected in the price of the equipment; and that at no time in the dealings between the parties during the period when defects arose on the trailers did Gindy ever take the position that the equipment had been purchased "as is." These assertions in the affidavit of defendant's president are uncontroverted in the record before me.
N.J.S.A. 12A:2-314(1) provides that an implied warranty of merchantability accompanies a sale of goods by a merchant of goods of that kind unless such warranty is excluded or modified pursuant to N.J.S.A. 12A:2-316. N.J.S.A. 12A:314(2) (c) provides that merchantable goods must be "fit for the ordinary purposes for which such goods are used."
For contract purposes an issue may be raised as to whether the defects in question were minor, unremarkable defects which require adjustment and correction without constituting a breach of an implied warranty of merchantability. Compare Adams v. Peter Tramontin Motor Sales, Inc., 42 N.J. Super. 313, 325 (App. Div. 1956), where it was held that defects in motor tuning, door locks, dome light and the like did not make a new car unmerchantable, with Zabriskie Chevrolet, Inc. v. Smith, 99 N.J. Super. 441, 457 (Law Div. 1968), where a faulty transmission, making an auto inoperable, justified the buyer's rejection.[1] See also Henningson *388 v. Bloomfield Motors Inc., 32 N.J. 358, 410 (1960), where the allegedly defective steering mechanism created a jury question as to the breach of warranty of merchantability.[2]
The Code itself attempts to adjust the buyer's need for exact performance  failure to conform "in any respect" (N.J.S.A. 12A:2-601)  with the seller's needs, by allowing a seller to cure defects within the time for performance or when the seller had "reasonable grounds to believe" the buyer would accept "with or without money allowance." N.J.S.A. 12A:2-508. To revoke acceptance the non-conformity must substantially impair the value of the goods to the buyer. N.J.S.A. 12A:2-608; Zabriskie Chevrolet, Inc. v. Smith, supra. Often, as in the case at hand, adjustment of the competing interests of the seller and buyer is accorded by custom of the trade or dealings between the parties. See Code Comments to section 2-508, and Code Comment 2, N.J.S.A. 12A:2-106(2) (defining "conforming" goods), which is as follows:
It is in general intended to continue the policy of requiring exact performance by the seller of his obligations as a condition to his *389 right to require acceptance. However, the seller is in part safeguarded against surprise as a result of sudden technicality on the buyer's part by the provisions of section 2-508 on seller's cure of improper tender or delivery. Moreover usage of trade frequently permits commercial leeways in performance and the language of the agreement itself must be read in the light of such custom or usage and also, prior course of dealing, and in a long term contract, the course of performance.
N.J.S.A. 12A:2-314(3) provides:
Unless excluded or modified (12A:2-316) other implied warranties may arise from course of dealing or usage of trade.
Defendant asserts without contradition that it has always been the custom in the trade and in defendant's relationship with Gindy that all manufacturing defects were the responsibility of Gindy and that, when such defects appeared, Gindy in the past did make the necessary corrections or repairs at its own expense. In this transaction, too, Gindy undertook to correct the defects in the trailers. The express terms of an agreement should be construed where reasonable as consistent with the custom of the trade or a course of dealing evidenced by previous conduct of the parties. N.J.S.A. 12A:1-205. Moreover, a course of performance is relevant to the interpretation of an agreement. N.J.S.A. 12A:2-208. The express terms of an agreement and a course of performance, course of dealing and usage of trade "shall be construed whenever reasonable as consistent with each other * * *." N.J.S.A. 12A:2-208(2).
Defendant asserts that the trailers were delivered with faulty radius rods. In the answer and counterclaim defendant asserts that the defects caused premature tire wear and loss of use of the equipment, presumably while repairs were being made. From the facts at hand it is not clear whether the defects were so serious as to make the vehicles unmerchantable within the principles of Adams v. Peter Tramontin Motor Sales, Inc., supra. (It is noted that in the Adams case the dealer did repair the minor defects in the auto). *390 Repairs undertaken by plaintiff, the usage of trade and prior dealings of the parties offer strong evidence of plaintiff's obligation to make such repairs, whether in satisfaction of an implied warranty of merchantability or in satisfaction of a stricter implied warranty claimed by defendant under N.J.S.A. 12A:2-314(3), quoted above, namely, an implied warranty to repair all defects in manufacture regardless of their seriousness. Code Comment 12 has been interpreted to indicate that "other implied warranties" arising under section 2-314(3) by course of dealing or usage of trade are not limited to "what might ordinarily be regarded as warranties but also include collateral obligations related to a seller's performance." 1 Anderson Uniform Commercial Code, § 2-314:10, p. 209 (1961). Accordingly, unless properly disclaimed pursuant to section 2-316, there arose in this transaction an implied warranty on the part of Gindy to accept responsibility for defects in manufacture, at least to the extent of repair or replacement.
Plaintiff contends that an appropriate disclaimer of all warranties was expressly provided by Paragraph H of the agreement quoted above. Plaintiff also relies upon the separately signed agreement that a modification of the contract cannot be made except in writing. N.J.S.A. 12A:2-209(2).
N.J.S.A. 12A:2-316 provides:
(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Chapter on parol or extrinsic evidence (12A:2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.
(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
*391 (3) Notwithstanding subsection (2)
(a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.
(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Chapter on liquidation or limitation of damages and on contractual modification of remedy (12A:2-718 and 2-719).
To disclaim an implied warranty of merchantability, section 2-316(2) of the Code requires the use of the word "merchantability," and requires, in a written contract, that such exclusion must be in "conspicuous" language. "Conspicuous" is defined by N.J.S.A. 12A:1-201(10) to include such writing "that a reasonable person against whom it is to operate ought to have noticed it." The definition provides that "a printed heading in capitals * * * is conspicuous," and that "conspicuous" writing includes larger print or other contrasting type or color. This section also provides that conspicuousness is to be determined by the court.
The definition also provides that "in a telegram any stated term is conspicuous." The definition of "conspicuous" is not exhaustive nor does it mean that in all circumstances ordinary print cannot be conspicuous. See Code Comment 10, § 1-201 which says that "the test is whether attention can reasonably be expected to be called to it."
In the case at hand an implied warranty of merchantability has not been excluded in a manner that conforms to N.J.S.A. 12A:2-316(2). The word "merchantability" is not used and the exclusion is not conspicuous. Paragraph H does not contain larger or different type in the exclusionary provision; the only large type is the printed heading *392 which reads, "WARRANTIES." The use of that heading did not make the exclusion conspicuous; if anything, it would suggest to a buyer who does not read the fine print that warranties are included, not excluded. In fact, there is an express warranty in the clause, but not by the seller. It is a warranty by the buyer as to clear title of a vehicle given in trade.
Plaintiff contends, however, that the "as is" provision is sufficient to disclaim all implied warranties. On the other hand, defendant contends that the "as is" clause is inoperative because it is not appropriate to the transaction, involving the sale of new vehicles, and because the clause is not in conspicuous language.[3]
Subsection (3) does not use the term "conspicuous." Subsection (2), which requires the use of conspicuous language in written agreements to exclude or modify implied warranties of merchantabilty or fitness, is expressly made subject to subsection (3). The introductory language of subsection (3) also suggests the supremacy of its provisions over subsection (2). Thus, reading the two subsections literally would eliminate the requirement of "conspicuous" language as a condition for the exclusion of all implied warranties where expressions like "as is" are used. On the other hand, the intent may have been simply to provide in subsection (3) a qualification of subsection (2) so as to permit the use of commonly understood terms in substitution for the term "merchantability" or terms respecting fitness, without eliminating the requirement of conspicuous language where the agreement is in writing. Prof. William D. Hawkland, the first Research Director of the New Jersey Uniform Commercial *393 Code Study Commission, finds the need for conspicuousness in subsection 3(a). In 1 Hawkland, A Transitional Guide to the Uniform Commercial Code, 76-78 (A.L.I. 1964), Prof. Hawkland says with respect to subsection 2-316(3) (a):
While the subsection does not explicitly so provide, it would seem that these phrases and expressions would have to be stated conspicuously to become effective disclaimers. Such a requirement is consistent with the general rule that the disclaimer must "call" the risk to "the buyer's attention" and "make * * * plain (to him) that there is no implied warranty."
Prof. Hawkland's interpretation harmonizes with the basic purpose of the Code to protect the buyer from surprise. Code Comment 1, § 2-316. See also Code Comment 11, § 2-314, which says in part:
The warranty of merchantability, whereever it is normal, is so commonly taken for granted that its exclusion from the contract is a matter threatening surprise and therefore requiring special precaution.
The original draft of section 2-316 contained a single paragraph (2) which provided for the exclusion of warranties with three exceptions comparable to sub-paragraphs (a), (b) and (c) now contained in subsection (3). U.C.C. Supp. No. 1 (1952), § 2-316. The amendment of section 2-316 to its present form broke subsection (2) into two parts. One part remained section (2) and the exceptions became section (3). To section (2) was added the requirement of conspicuous language where a disclaimer is in writing. In addition, section (2) was amended to require that a disclaimer of an implied warranty of fitness must always be in writing, and the requirement of specific language to avoid a warranty of fitness was changed.
The drafters of the Code made the following comment upon the redrafting of subsection (2):
*394 Reason: Former subsection (2) was rewritten and divided into subsection (2) and (3) in Supp. No. 1 to relieve the seller from the requirement of disclaiming the warranty of fitness in specific language and yet afford the buyer an adequate warning of such disclaimer. Subsequently, subsection (1) was rewritten and subsections (3) (a) and (3) (b) changed for clarification and to meet criticism by the New York Commission. U.C.C., 1956 Recommendations, at 40.
No comment was made regarding the applicability of the conspicuous language requirement to subsection (3), and no case has been found in New Jersey or elsewhere which deals with the problem. Nor is it dealt with in the Code Comments or in the New Jersey Study Comment. In his comments to forms 1, 2 and 3 applicable to section 2-316 (27 N.J. Practice (Abrams, Uniform Commercial Code Forms), 200-202 (1967)), Arthur L. Abrams, Chairman of the Uniform Commercial Code Study Commission of New Jersey, emphasizes the requirement of conspicuous language where implied warranties are to be excluded or modified in writing. However, Mr. Abrams does not expressly deal with the possible interpretation that an expression like "as is" need not be conspicuous.
Mr. Abrams notes that language excluding a warranty of merchantability must mention "merchantability" and if in writing must be conspicuous. He then goes on to say: "Notwithstanding the foregoing, however, all implied warranties (including the warranty of merchantability) are excluded by expressions such as `with all faults', `as is', or other language which makes it plain that there are no implied warranties, and may also be excluded or modified by course of dealing, course of performance or usage of trade." By contrast, Mr. Abrams points out that a limitation of remedies for breach of warranty need not be conspicuous, citing section 2-316(4). Mr. Abrams does not clearly say that conspicuous language need not be used when an "as is" clause appears. His choice of words, "notwithstanding the foregoing, however, all implied warranties * * * are excluded *395 by expressions as * * * `as is' * * *" may be taken to suggest this result.
The metamorphosis of section 2-316 and the reason given in the legislative history mentioned above suggest that the use of expressions like "as is" was intended merely to give effect to common terms in addition to those specified in subsection (2) as a means for disclaiming certain warranties. There is no evidence of a legislative purpose to require conspicuous language in one case and not when expressions like "as is" are used.
It appears desirable to read into section 2-316(3) the requirement of conspicuousness when the attempted disclaimer is in writing. This would avoid surprise to a buyer and fulfill a fundamental purpose of the Code. However, one of the difficulties is that subsection (2) deals expressly with disclaiming the implied warranties of merchantability and fitness. It does not deal with disclaimer of other implied warranties arising from a course of dealing or usage of trade under N.J.S.A. 12A:2-314(3). While subsection (2) deals with two types of implied warranties and expressly imposes the requirement of conspicuous language in writings as to them, subsection (3) (a) specifically refers to "all implied warranties" and does not contain the requirement of conspicuous language. Recognizing this, Prof. Hawkland notes that such a requirement would be "consistent" with other terms in subsection 3(a). Saying this, however, does not solve the problem. The phrase relied upon by Prof. Hawkland, "other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty" simply describes the class which includes expressions like "as is" and "with all faults." If the requirement of "conspicuous" language had been intended, being a term defined by the Code itself in section 1-201(10), the draftsmen should have expressly included that term in subsection (3). Perhaps it is a matter of poor draftsmanship or oversight. But it always presents a problem for the *396 court when the omission of a provision that could so easily have been included seems to conflict with an underlying purpose of the legislation. See State v. Patfol, Inc., 76 N.J. Super. 287 (App. Div. 1962), reargument denied, 76 N.J. Super. 572 (App. Div. 1962), certif. granted, 39 N.J. 89 (1963), order for certif. vacated as moot, 40 N.J. 332 (1963).
It does not make sense to require conspicuous language when a warranty is disclaimed by use of the words "merchantability" or "fitness" and not when a term like "as is" is used to accomplish the same result. It serves no intelligible design to protect buyers by conspicuous language when the term "merchantability" is used, but to allow an effective disclaimer when the term "as is" is buried in fine print. Nor does it make sense to require conspicuous language to disclaim the implied warranties of merchantability and fitness and not impose a similar requirement to disclaim other implied warranties that arise by course of dealing or usage of trade. The expectations of the buyer need as much protection in one case as in another. My preference, therefore, is to find that there is a requirement of conspicuousness when terms like "as is" are used to exclude an implied warranty of merchantability or fitness. It seems reasonable to say that to avoid these implied warranties the requirements of subsection (2) must be met, except that expressions like "as is" will be given effect in addition to the expressions specified in subsection (2). This interpretation, nevertheless, would still leave intact the exclusion of implied warranties arising from a course of dealing or usage of trade by expressions like "as is," whether conspicuous or not. It would appear desirable, to eliminate all doubt in this area, for the legislature to amend N.J.S.A. 12A:2-316 so as to include an express requirement of conspicuous language when a writing is used to exclude or modify any and all implied warranties. In any case, an interpretation requiring conspicuousness to avoid the warranties of merchantability and fitness still leaves open the effect of the disclaimer clause *397 here on the implied warranties arising under section 2-314 (3). My holding below on this issue is dispositive of this motion.
The agreement in question is at least ambiguous as to the applicability of the "as is" clause in this transaction. Subsection (3) (a) of section 2-316 gives force to an "as is" clause "unless the circumstances indicate otherwise." Moreover, by the terms of that section the "as is" clause must call the buyer's attention to the exclusion of all warranties and make that result "plain." Ambiguity arises by virtue of the fact that at the beginning of the contract, before the description of the vehicles sold, there is a clause providing, "Buyer accepts delivery in good condition." (Defendant claims that this provision provides an express warranty of quality.) Moreover, the form contract provided by the seller by its terms was applicable to the sale of either a new vehicle or a used vehicle. Defendant's uncontradicted affidavit recites that an "as is" clause by custom of the trade may be expected in the sale of used vehicles but not in the sale of new vehicles. Accordingly, whether or not the provision for "delivery in good condition" was intended to create an express warranty of quality, that clause, together with the inappropriateness of the "as is" clause in the sale of new trailers, would not "make it plain" to a buyer that the "as is" clause was intended to disclaim all implied warranties in this transaction. A buyer could reasonably expect that the clause in question was to apply only when the form contract was employed in the sale of used vehicles. This interpretation would make the provisions of the contract consistent with prevailing usage of trade and the previous course of dealing between the parties. Also, Gindy's undertaking to supply replacement parts and to have the vehicles repaired at its own cost, without disclaiming responsibility, without reliance on the "as is" clause, shows an interpretation by Gindy of this contract consistent with defendant's position.
The "as is" clause employed in the contract, even augmented by language stating "that no warranty express *398 or implied arises apart from this writing," appears inappropriate to this transaction, given the usage of the trade and the dealings of the parties. All of that language was not sufficient to call attention and make plain to defendant that there was no implied warranty intended by the seller with respect to the sale of new vehicles as distinguished from used vehicles. Significantly, almost without exception, "as is" and similar expressions construed by the courts are found in cases dealing with the sale of used vehicles, articles or equipment. See R.E. Brooks Co. v. Storr, 111 N.J.L. 316 (E. & A. 1933); St. George v. Grisafe, 38 N.J. Super. 297 (App. Div. 1955); Crown Cork & Seal Co., Inc. v. Hires Bottling Co. of Chicago, 254 F. Supp. 424 (N.D. Ill. 1966); First National Bank of Elgin v. Husted, 57 Ill. App.2d 227, 205 N.E.2d 680 (App. Ct. 1965); and numerous cases cited in Annotation, "Construction and effect of affirmative provision in contract of sale by which purchaser agrees to take article `as is,' in the condition in which it is, or equivalent term," 24 A.L.R.3d 465 (1969). But see: Byrd v. Harry Sommers, Inc., 87 Ga. App. 663, 75 S.E. 2d 287 (Ct. App. 1953) and Varkell v. United States, 167 Ct. Cl. 522, 334 F.2d 653 (1964). Code Comment 3, § 2-314 recognizes that a distinction must be drawn when the sale involves used goods, saying: "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description."
The effectiveness of an "as is" clause as a disclaimer is conditioned by the preamble of Section 2-316(3), namely, "unless the circumstances indicate otherwise." In the case at hand the circumstances do indicate otherwise. One buying a new vehicle under a contract requiring acceptance of delivery "in good condition" could readily say that in these circumstances "as is" means new and in good mechanical condition. This is exactly the interpretation which the parties gave to this instrument.
*399 Accordingly, the "as is" clause in this contract is not effective to disclaim an implied warranty of merchantability, nor an implied warranty arising by usage of trade or course of dealing. This holding is a corollary to Code Comment 2, § 2-508. By that Comment a buyer is precluded from relying on a "no replacement" clause in a "form" contract to prevent a seller from curing defects in performance, where that clause is "out of line with trade usage or the prior course of dealing and was not called to the seller's attention." The Comment indicates that these circumstances are sufficient to show that the seller had reasonable grounds to believe the tender would be acceptable within the meaning of section 2-508 (2). Just as the seller should be allowed to perform reasonably and not be precluded by an unexpected term in a form contract, so, too, the buyer should be assured of reasonable performance and not be deprived thereof by unexpected terms in a form contract.
For the foregoing reasons plaintiff's motion for summary judgment is denied. An appropriate order shall be submitted.
NOTES
[1] Some defects do not justify rejection by the buyer but can be cured by replacement or repair. N.J.S.A. 12A:2-508. See also N.J.S.A. 12A:2-719, providing for a limitation on the buyer's remedy to the repair or replacement of non-conforming goods or parts, and Code Comment 4 to section 2-508 to the effect that trade usage permitting variations without rejection but with price allowance may enter into an agreement as a contractual limitation of remedy.
[2] The Henningson case was a personal injury case which gave rise to the principles of strict liability in tort in New Jersey. Santor v. A & M Karagheusian, Inc. 44 N.J. 52 (1965); Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965); Cintrone v. Hertz Truck Leasing, 45 N.J. 434 (1965); Newmark v. Gimbel's Incorporated, 54 N.J. 585 (1969). For strict liability in tort a defect sufficiently dangerous to cause physical harm is actionable. Newmark v. Gimble's Incorporated, supra, at 595. See also 2 Restatement, Torts 2d, § 402A (1965), where the test is a "defective condition unreasonably dangerous to the user or consumer or to his property." The Uniform Commercial Code also provides the right to sue for injury to person or property resulting from any breach of warranty. N.J.S.A. 12A:2-715(2) (b). This right extends to the buyer and members of his family and household (N.J.S.A. 12A:2-318) and may be extended to others by case law. Code Comment 3 to section 2-318. See also, Seely v. White Motor Company, 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (Sup. Ct. 1965) which distinguishes between the law of warranty as a regulation of economic relationships between suppliers and consumers and strict liability in tort as a regulation of responsibility for physical injuries.
[3] Defendant also claims an implied warranty of "fitness" for defendant's purposes. It is doubtful that the defects here constitute a breach of an implied warranty of fitness for a particular purpose. See Adams v. Peter Tramontin Motor Sales, Inc., supra, 42 N.J. Super. at 324. In any case my views concerning disclaimer of an implied warranty of merchantability in this transaction would also apply to the disclaimer of an implied warranty of fitness, which must be in writing and conspicuous under N.J.S.A. 12A:2-316(2)